# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| AUTODATA SOLUTIONS, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case No. 2:12-cv-704-JRG-RSP |
| | § |
| VERSATA SOFTWARE, INC. & | § |
| VERSATA DEVELOPMENT GROUP, | § |
| INC., | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Versata Software, Inc.'s ("Versata") Motion to Dismiss. (Dkt. No. 30.) Versata contends this case should be dismissed because Plaintiff Autodata Solutions, Inc.'s ("Autodata") trade secret misappropriation claims are barred by *res judicata*. The Court has considered the facts and arguments and finds that Versata's Motion to Dismiss (Dkt. No. 30) should be **GRANTED**.

## BACKGROUND

In pursuit of further business, Autodata revealed trade secrets to Versata on November 17, 1997. Those trade secrets included: (1) a diagram showing the layout of the master storage database for Autodata's content Data Management, (2) a diagram showing the layout of a custom runtime format using a subset of the information from the master storage database altered to accommodate a companion software application, and (3) a software application that automatically comparably equipped a second and subsequent product to the features of a first product. (Dkt. No. 34-2 ¶6.)

The parties entered into a business relationship shortly after Autodata disclosed these trade secrets. The business relationship was governed by a Master Services Agreement ("MSA") signed on May 13, 1998. (Dkt. No. 34-2 ¶7.) On August 8, 2008, ten years after they had signed the MSA, Versata sued Autodata for patent infringement ("the Patent Action") in the Eastern District of Texas. (Dkt. No. 30 at 2.) Autodata counterclaimed. Autodata argued that Versata's patents were unenforceable because Versata had obtained the patents by misappropriating Autodata's trade secrets. (Dkt. No. 34 at 8.) After a four-day trial on patent infringement and trade secret misappropriation, a jury found Versata's patents invalid and Versata liable for trade secret misappropriation. (Dkt. No. 373 at 1 (2:08-cv-313-WCB).)

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and identify the evidence demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

**B.     *Res judicata* Standard**

"The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action." *Davis v. Dal. Area Rapid Transit*, 383 F.3d 309, 312–13 (5th Cir. 2004). Four elements must be met for *res judicata* to apply: (1) the parties are identical or in privity, (2) the judgment in the prior action was rendered by a court of competent jurisdiction, (3) the prior action was concluded by a final judgment on the merits, and (4) the same claim or cause of action was involved in both actions. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

In determining if the "same claim or cause of action" element is met, courts in the Fifth Circuit apply a "transactional test." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 330 (5th Cir. 2007). That test "requires [] the two actions be based on the same 'nucleus of operative facts.'" *Id.* (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)); *see Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) ("[A] prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] transaction arose.'" (quoting *Davis*, 383 F.3d at 313)).

A court relies on several factors to define the "transaction" or "series of transactions." Those include: (1) whether the facts are related in time, space, origin, or motivations; (2) whether they form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). The "nucleus of operative facts" defines the claim, not the type of relief requested, substantive theories advanced, or type of rights asserted. *Hous. Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016).

## ANALYSIS

The parties agree three elements of *res judicata* are met: the parties in this Action and the Patent Action are the same, the judgment in the Patent Action was issued by a court of competent jurisdiction, and the Patent Action was concluded by a final judgment on the merits. (Dkt. No. 34 at 16.) The issue before the Court is whether the fourth element of *res judicata* is met. The parties dispute whether the trade secret misappropriation counterclaims in the Patent Action involve the same "transaction" or "series of transactions" as the trade secret misappropriation claims in this Action.

Versata argues the trade secrets in the Patent Action ("the Data Supplier Information") arise out of the "same nucleus of operative facts" as the alleged trade secrets in this Action ("the Data Management Information"). (*See* Dkt. No. 30 at 16.) Versata contends *res judicata* bars Autodata's claim because (1) this claim and the Patent Action counterclaim "involve[] the same core claim," (2) the Patent Action and this Action rely on facts occurring in the same timeframe, (3) "Autodata disclosed the alleged trade secrets in both [the Patent Action and this Action] as part of the same project," (4) the Patent Action and this Action both involve the MSA, and (5)

the "customers to whom Versata is alleged to have disclosed the trade secrets also overlap in both cases." (*See* Dkt. No. 30 at 16.)

Autodata, in response, asserts the claims in the Patent Action and this Action arise out of different "transactions." Autodata says that it disclosed the Data Supplier Information in November 1997 and May 1998 in conjunction with a project for Ford ("the Ford Project"). (*See* Dkt. No. 34 at 23 ("Autodata disclosed the Ford Schema in May 1998 in conjunction with Autodata and Versata entering into the Master Services Agreement in order to show Versata how Autodata's vehicle data can be extracted and structured into a customized format that Versata could use in its software engines on the Ford website they were building.").) Autodata asserts, in contrast, that it disclosed the Data Management Information in December 1998 for reasons other than the Ford Project. (*See* Dkt. No. 34 at 5 ("Autodata was not required to disclose this technology per the [MSA] but did so because they were trying to expand the business relationship between the parties, and Autodata knew that Versata was bound by its confidentiality obligations under the [MSA].").)

The Court finds the trade secret misappropriation claims in the Patent Action and this Action arise from the same "nucleus of operative facts." **First**, the Data Supplier Information and the Data Management Information were disclosed at similar times. Autodata disclosed the Data Supplier Information in November 1997 and May 1998 and disclosed the Data Management Information soon after in December 1998. These disclosures also occurred in "the middle of an ongoing business relationship between the parties that existed from late 1997 through mid 1999." (Dkt. No. 46 at 11.)

**Second**, the Data Supplier Information and the Data Management Information were disclosed for related reasons. *See Petro-Hunt*, 365 F.3d at 396 ("What factual groups constitutes

5

a 'transaction' . . . are to be determined pragmatically giving weight to such considerations as whether the facts are related in . . . motivation . . . ."). Autodata disclosed the Data Supplier Information in order to work with Versata on the Ford Project. (*See* Dkt. No. 34-2 ¶7 ("Ultimately, Autodata was selected to be Versata's data vendor for Ford.").) Autodata disclosed the Data Management Information in order to obtain work from Versata on similar projects in the future. (*See* Dkt. No. 49-7 at 1 ("[W]e should give this presentation at the director level at [Versata] since they were most likely looking for a long term partner to work with on **similar projects in the future**.") (emphasis added).)

**Third**, the Data Supplier Information and the Data Management Information were disclosed in a series of related business transactions. *See Petro-Hunt*, 365 F.3d at 396 ("What factual groups constitutes a 'transaction' . . . are to be determined pragmatically giving weight to . . . whether . . . their treatment as a unit conforms to the parties' expectations or business understanding or usage."). Autodata cannot seriously dispute that the disclosure of the Data Supplier Information led to the disclosure of the Data Management Information. Versata inquired about the Data Management Information only after it had used the Data Supplier Information in the Ford Project. (*See* Dkt. No. 49-7 at 1 ("He did say that he [was] 'surprised' by what must be an extremely advanced and complex maintenance system on our end to produce data that was so flexible and malleable in light of all the [Versata] specific business rules we are able to apply to our iterations.").) That the Data Supplier Information and the Data Management Information were both disclosed under the MSA, confirms that the parties viewed the disclosures as part of related business transactions. (*See* Dkt. No. 34-2 ¶8 ("Autodata was not required to disclose this technology per the agreement but did so because they were trying to expand the

business relationship between the parties, and Autodata knew that Versata was bound by its confidentiality obligations under the agreement.").)

**Finally**, the trade secret misappropriation claims in both cases would form a convenient trial unit. Autodata and Versata had a business relationship that spanned over a decade. The duration and complexity of their business relationship shows that facts relevant to proving or defending one trade secret misappropriation claim would be relevant to proving or defending another. For example, at a minimum, Autodata would have to explain the basis of the MSA in both this Action and the Patent Action. (*See* Dkt. No. 50 at 3 ("[A]s outlined in Versata's motions, in the prior lawsuit the parties' entire business relationship over the course of a decade was at issue—not merely the partnership in 1997 through 1999, but also a lawsuit filed in 1999, the 2001 settlement agreement, a proposed acquisition in 2000-2001, and competition at Chrysler in 2007-2008).)

## CONCLUSION

The claim in this case existed at the time of the Patent Action and is based on events that are closely related in substance and time to the counterclaims in the Patent Action. "The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action." *Davis*, 383 F.3d at 312–13. Accordingly, the Court finds that Versata's Motion to Dismiss (Dkt. No. 30) is **GRANTED**.

**So Ordered this**
**Mar 30, 2016**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE